# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RICHARD BILIK, | ) |
|     Plaintiff, | ) |
| v. | ) No. 12-cv-06325 |
| MARCUS HARDY, et al., | ) Judge Andrea R. Wood |
|     Defendants. | ) |

## ORDER

Defendants Kim Butler, Landria Dennis, Marcus Hardy, and Nancy Ponovich's motion to dismiss [145] is granted in part and denied in part. The motion is granted as to Dennis and Ponovich; the claims against them are dismissed. The motion is denied as to Butler and Hardy. See the accompanying Statement for details.

## STATEMENT

Plaintiff Richard Bilik is an inmate in the custody of the Illinois Department of Corrections. Bilik suffers from a dairy allergy. Yet, during his incarceration at both Stateville Correctional Center ("Stateville") and Menard Correctional Center ("Menard"), Bilik contends he was denied an appropriate dairy-free diet. He thus has brought this action against various Stateville and Menard officials under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Four of the Defendants named in the Third Amended Complaint ("TAC") now move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 137.)

### I.

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the TAC as true and views those facts in the light most favorable to Bilik as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

As alleged in the TAC, Bilik began his incarceration at Stateville in February 2010. (TAC ¶ 14, Dkt. No. 137.) Upon his arrival, prison authorities received Bilik's medical forms that expressly stated he had a dairy allergy. (*Id.* ¶ 44.) Because of Bilik's dairy allergy, he is unable to ingest food or beverages containing lactose without experiencing severe intestinal pain, diarrhea, and flatulence. (*Id.* ¶ 4.) However, the year before Bilik's arrival, Stateville's Warden, Defendant Marcus Hardy, fired the prison's dietician and cancelled all medical diets. (*Id.* ¶ 5.) Pursuant to this policy, Bilik was not provided with lactose-free meals. (*Id.* ¶ 46.) Despite his best efforts to

avoid foods obviously containing dairy products, Bilik would still inadvertently consume foods containing dairy products. (*Id.* ¶¶ 6, 56.) On some occasions, he had to consume dairy products out of necessity so he would not starve. (*Id.*) The lack of a dairy-free diet caused Bilik constant suffering from pain caused by his allergy. (*Id.* ¶¶ 6, 10–11, 57.)

As soon as he was able, Bilik began filing grievances to Hardy concerning his need for a dairy-free diet. (*Id.* ¶ 48.) In those grievances, Bilik detailed his dairy allergy and the issues caused by Stateville's failure to provide him lactose-free meals. (*Id.*) Hardy responded to one of those grievances by refusing to provide Bilik his requested relief. (*Id.* ¶ 51.) After Bilik filed another grievance, Defendant Landria Dennis, a Stateville correctional counselor, replied by incorrectly stating that Bilik's allergy was being appropriately treated. (*Id.* ¶¶ 52–53.) Her reply also noted that Stateville did not provide special meals even to offenders with food allergies. (*Id.* ¶ 54.) The only medical care Stateville provided for Bilik's allergy was a prescription for Lactaid, which did nothing to alleviate the symptoms he experienced after consuming dairy. (*Id.* ¶ 65.)

Later, Bilik was transferred to Menard in October 2012. (*Id.* ¶ 15.) Once again, he was unable to receive dairy-free meals. (*Id.* ¶ 72.) When he filed grievances complaining about the lack of meals appropriate for his dietary restrictions, Menard staff not only refused to help him but actually harassed him in an effort to stop him from filing grievances. (*Id.* ¶¶ 73–76.) Moreover, Menard staff prevented Bilik from receiving medical care for his allergy. (*Id.* ¶¶ 80–81.)

Bilik's TAC names as Defendants numerous individuals at Stateville and Menard who he alleges were deliberately indifferent to his dairy allergy. Presently, four of those Defendants have filed a motion to dismiss. In addition to Hardy and Dennis, Nancy Ponovich, a Stateville superintendent, and Kim Butler, Menard's Warden, (together, "Moving Defendants") join the motion.

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

A prisoner seeking to state a claim for deliberate indifference to his serious medical needs must establish that he suffered "an objectively serious medical condition" and "an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Here, no Moving Defendant contests that Bilik's dairy allergy was an objectively serious medical condition. Instead, Moving Defendants simply claim that the allegations fail to show that they were personally involved in any constitutional deprivation. Moreover, Moving Defendants contend that, as non-medical personnel, they were entitled to rely on the judgment of medical staff.

To establish a prison official's deliberate indifference, a plaintiff must show that the official "acted with a sufficiently culpable state of mind." *Id.* at 751 (internal quotation marks omitted). "A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Id.* "The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). One way a plaintiff may establish deliberate indifference is by showing that a prison official knows of a prisoner's special dietary needs but nonetheless denies him appropriate meals in disregard of the prisoner's health. *See, e.g.*, *Henderson v. Jess*, No. 18-cv-680-jdp, 2018 WL 7460046, at *4 (W.D. Wis. Oct. 25, 2018); *McCabe v. Aramark Food Servs.*, No. 01 C 5429, 2002 WL 27661, at *2 (N.D. Ill. Jan. 10, 2002); *Dye v. Sheahan*, No. 93 C 6645, 1995 WL 109318, at *4–*5 (N.D. Ill. Mar. 10, 1995).

Furthermore, to state a deliberate indifference claim, the plaintiff must "allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez*, 792 F.3d at 781. "An official satisfies the personal responsibility requirement . . . if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Arnett*, 658 F.3d at 757 (internal quotation marks omitted). Put differently, "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez*, 792 F.3d at 781 (internal quotation marks omitted).

First, Bilik contends that Hardy, as Warden, affirmatively cancelled all medical diets at Stateville and then ignored Bilik's grievances complaining about the pain being denied a lactose-free diet caused him. Hardy, on the other hand, claims that his denial of Bilik's grievance is not sufficient to establish his personal involvement. It is true that "[m]ere receipt of grievances from a prisoner is insufficient to establish that a prison warden was personally involved in any deficient medical care provided to the prisoner." *McDowell v. Pfister*, No. 13 C 3375, 2017 WL 359199, at *2 (N.D. Ill. Jan. 23, 2017). Nonetheless, "[a]n inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781–82. Specifically, the "plaintiff must demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755.

According to Bilik's allegations, Hardy went beyond simply denying Bilik's grievances. He displayed a general indifference to the health of all prisoners with special dietary needs when he cancelled medical diets at Stateville. *See McDonald v. Hardy*, 821 F.3d 882, 890 (7th Cir. 2016) ("There is no evidence in the record that [non-medical prison supervisors] ever consulted a medical professional about the advisability of cancelling the allowance for low-cholesterol diets at the prison. Interference with prescribed treatment is a well-recognized example of how nonmedical prison personnel can display deliberate indifference to inmates' medical conditions."). Then, when Bilik submitted a grievance "detailing his dairy allergies and the medical problems caused by his inability to obtain meals at Stateville that were lactose-free," Hardy continued to adhere to his policy and denied Bilik his requested relief. (TAC ¶¶ 48, 51.) Thus, Bilik has sufficiently pleaded Hardy's personal involvement because the alleged constitutional deprivation occurred at his direction.

3

Hardy further asserts that because Bilik was receiving treatment from Stateville medical professionals, Hardy was permitted to rely on their judgment and treatment decisions. Generally, when a prisoner is being treated by medical personnel, non-medical defendants are justified "in believing that the prisoner is in capable hands." *Arnett*, 658 F.3d at 755. An exception to this rule lies where non-medical officials "have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013). In this case, Hardy did not simply rely on medical personnel's judgment. Indeed, by cancelling medical diets, Hardy circumscribed their judgment as he did not allow special meals even for prisoners with food allergies. (TAC ¶ 54.) Moreover, Hardy learned through Bilik's grievances that the treatment Bilik was receiving was ineffective, yet Hardy nonetheless declined to allow him to receive dairy-free meals. Thus, Hardy cannot defeat Bilik's claim based on his purported reliance on medical professionals. And because Hardy was personally involved in the alleged constitutional deprivation, the motion to dismiss is denied as to him.

On the other hand, Bilik does fail plausibly to allege that either Ponovich or Dennis were personally involved in any constitutional deprivation. The TAC has no specific allegations as to Ponovich whatsoever. Instead, it simply states that Ponovich knew or should have known, based on her supervisory role, that Bilik was not being provided appropriate meals and the treatment he was receiving for his allergy was insufficient. (TAC ¶ 55.) However, "a § 1983 plaintiff may not rely on a theory of respondeat superior" to hold a prison official liable. *Perez*, 792 F.3d at 781. And because Bilik does not allege that Ponovich received his grievances or had any knowledge of his dairy allergy, Bilik does not plead sufficient facts showing her personal involvement. As for Dennis, Bilik does allege that she received and replied to his grievances. But Dennis also accurately informed Bilik that medical staff told her "they do not provide special diet trays to offenders even in cases of food allergies." (TAC ¶ 54.) This was Hardy's policy, and Bilik does not allege that Dennis had any power to change or make exceptions to it. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."). In short, Bilik fails to plead sufficient personal involvement on the part of either Ponovich or Dennis, and for that reason his claims against them are dismissed.

Finally, Bilik claims that he was also denied lactose-free meals when he was incarcerated at Menard and seeks to hold its Warden, Butler, liable for deliberate indifference. Unlike with Hardy, Bilik does not contend that Butler enacted a policy of denying appropriate meals for prisoners with dietary restrictions. The only allegations of Butler's personal involvement concern her role in the grievance process. Nonetheless, Bilik pleads that Butler received his grievances, which apprised her of his dairy allergy and his inability to obtain lactose-free meals at Menard, and yet ignored those grievances. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("Perhaps it would be a different matter if [the prison official] had ignored [the plaintiff's] complaints entirely . . . .") Moreover, Butler cannot claim that she was simply deferring to Menard's medical staff because Bilik alleges that he was not receiving medical treatment. Indeed, Bilik claims that he was refused a referral to medical personnel. (TAC ¶¶ 79–81.) At this stage, Bilik has adequately stated a claim against Butler.

4

In sum, Bilik has stated claims against Hardy and Butler, and the motion to dismiss is denied as to them. However, Bilik fails to sufficiently plead facts showing Ponovich's and Dennis's personal involvement in any constitutional deprivation. Consequently, the motion to dismiss is granted as to Ponovich and Dennis.

Dated: September 27, 2019

Andrea R. Wood
United States District Judge